UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JO PATRICIA RABCHEV,<br><br>Defendant. | Case No. 2:21-cv-00197-CDS-EJY<br><br>**ORDER** |

## I.      Factual Background Leading To Sanctions

Certain facts are undisputed in the long history leading to this Order entering sanctions against Defendant Jo Patricia Rabchev ("Defendant").  This case commenced with the United States of America (the "Government") filing a Complaint against Defendant on February 4, 2021.  ECF No. 1.  Skipping the tortured history regarding service of process, Defendant, who was then-residing in Bulgaria, answered the Complaint on July 17, 2023.  ECF No. 43.  On September 14, 2023, the original discovery plan and scheduling order was entered.  ECF No. 47.  The Government served its third request for production of documents (each an "RFP" and collectively "RFPs") on March 7, 2024.  ECF No. 60-2.  Defendant's responses were due April 8, 2024.  Fed. R. Civ. P. 34.  RFP No. 1, in this third set of RFPs, sought substantial information pertaining to eight bank accounts belonging to Defendant that she maintained outside the United States.  ECF No. 60-2 at 5-6.[1]

On September 18, 2024, the Government sent Defendant a detailed Federal Rule of Civil Procedure ("Rule") 37 letter outlining the deficiencies in her original RFP responses.  ECF No. 60-4.  The Government explains its letter led to a discussion and Defendant's agreement to supplement her production.  ECF No. 60-1 ¶ 4.  Thereafter, Defendant requested a series of extensions, review of which demonstrate that as of November 21, 2024, she had not yet provided to UBS documentation necessary to allow her counsel to gather bank records responsive to the Government's March 2024

---

[1]      The eight accounts included two in Bulgaria (one in Bulbank and the other in Central Cooperative Bank Plc), one in the Cayman Islands, one in Canada, and four in UBS Swiss Financial Advisors AG ("UBS").

RFPs. *Id*. ¶ 12. Communications received from defense counsel further demonstrated that as of this same date (November 21, 2024), seven months after the initial responses to discovery were due, defense counsel had just "prepared letters to" banks in Canada and the Cayman Islands in an apparent attempt to obtain Defendant's banking records. *Id*. ¶ 13. On December 17, 2024, the first supplementation of responses to the Government's RFPs were received. *Id*. ¶ 14.

The Government emailed defense counsel a second Rule 37 deficiency letter on January 27, 2025. *Id*. ¶ 15. On February 5, 2025, the Government and defense counsel spoke regarding the letter, Defendant's supplemental responses, and why defense counsel still had not provided to UBS the form it had requested that would allow him to obtain Defendant's records from that bank. *Id*. ¶ 16. On April 15, 2025, Government counsel followed up with defense counsel regarding Defendant's deficient supplemental responses to the RFPs, reminding defense counsel that it had been two months since their last meet and confer. *Id*. ¶ 17.

The parties spoke on May 2, 2025, at which time the Government informed defense counsel it was planning to file a motion to compel as more than a year had passed since the responses to RFPs were due. *Id*. ¶ 18. Defense counsel responded by stating he was (just) planning to subpoena records from the Canadian bank the Government at which Defendant held an account. *Id*. Also these 14 months later, Defendant was (just) planning "to sign a power of attorney authorizing someone in Bulgaria to obtain the records from the Bulgarian banks." *Id*. Defense counsel told the Government "he would have the records within two weeks." *Id*.

On May 26, 2025, defense counsel informed the Government that Defendant's husband had died. *Id*. ¶ 20. The Government waited until July 15, 2025 to follow up with defense counsel regarding the pending discovery requests and promised supplementation. *Id*. ¶ 21. As of August 15, 2025, Government's counsel had heard nothing from Defendant (*id*. ¶ 22) and the Government filed its Motion to Compel explaining the long history of Defendant's failure to produce documents responsive to the requests first propounded in March 2024. ECF No. 60. The Court heard oral argument regarding the Motion to Compel on September 19, 2025, granted the Government's Motion, and gave Defendant through and including October 16, 2025 to complete her production of documents. ECF No. 69.

On October 16, 2025, Defendant filed a Motion to Extend Time to produce documents. ECF No. 72. This led the Government to grant Plaintiff an additional 30 days for the production. ECF No. 74. On December 3, 2025, Defendant filed her second Motion to Extend Time to produce documents. ECF No. 76. The Court entered an Order on December 18, 2025:

> To state it plainly, Defendant has stalled or otherwise provided enumerable excuses for the failure to produce records sought long ago by the United States. This cannot be reasonably disputed. However, given today's date and the extension requested, it makes little sense to deny Defendant's request that seeks to set January 2, 2026 (misstated as 2025 in Defendant's Motion) as the date by which she must produce the bank records recognized as requested. ECF No. 76 at 2. Nonetheless, Defendant is warned that this is the absolute last time an extension will be granted. Failure to produce all bank records requested by Plaintiff by or before January 2, 2026, will result in sanctions. Sanctions may include a finding of contempt of court, an award of attorney's fees and costs, a daily monetary fine, and or the striking of Defendant's Amended Answer.

ECF No. 80 (emphasis removed).

Despite the unequivocal statement by the Court, Defendant filed a Third Motion to Extend Time seeking to February 11, 2026 to produce documents requested almost two years prior. ECF No. 81. The Court noted Defendant's excuses for failing to produce documents and ordered:

> Defendant must show cause in writing no later than January 30, 2026 why she should not be held in contempt of court for the failure to produce documents held in Canada and the Cayman Islands after approximately two years of time to gather and produce the same. [In the event of a f]ailure to show cause[,] Defendant will be assess[ed] a daily fee of $100 as a sanction for her failure."

ECF No. 82. With respect to records from UBS, the Court noted Defendant's averment that the bank was "unable to produce documents until the end of January 2026." *Id*. The Court commented that there was no guarantee UBS would "produce … records at the end of January and, candidly, given the history of delay engaged in by Defendant," the Court had no confidence Defendant would "take all steps necessary to ensure production" occurred. *Id*. The Court gave the Government until January 12, 2026 to advise whether it objected to the extension of time requested by Defendant. *Id*. The Court then clearly advised Defendant "that absent some extraordinary event, this … [would be] absolutely the last time an extension … [would] be granted." *Id*. The Court stated "[d]aily monetary sanctions will be entered for every day after February 11, 2026 that such documents … [were] not produced." *Id*.

On January 12, 2026, after receiving the Government's opposition to Defendant's third extension request, the Court ordered (1) "the … prior order to show cause ["OSC"] no later than January 30, 2026, relating to Defendant's failure to produce documents held in Canada and the Cayman Islands remains in full force and effect"; (2) "one final extension of time, to February 11, 2026, no exceptions to be entertained, to produce ALL documents held and produced by UBS. …"; and (3) failure "to comply with the terms of this Order regarding production of all documents held by UBS by or before February 11, 2026, … will [result in] … an Order sanctioning Defendant.  Such sanctions will include a daily monetary sanction in the amount of $100 for every day Defendant fails to produce all such documents and the recommendation that: (i) certain facts in the Government's Complaint be established and taken as true for purposes of this action; and (ii) prohibits Defendant from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  ECF No. 84 (emphasis removed, corrections to romanette numbers made).

Defendant filed a response to the OSC on January 30, 2026, with an errata filed one day later. ECF Nos. 85, 86.  The errata included Defendant's one page, seven paragraph Declaration, Defendant's Tenth Supplemental Disclosure sent to the Government, and a few other unredacted bank documents.  ECF No. 86-1 at 2-22.[2]  In her Declaration, Defendant claimed, without identifying dates, that she "visited this bank in Bulgaria" (not clarifying which of the two Bulgarian banks in which she had accounts she was referring to) and received bank records that were given to her counsel who she believed provided them to the Government; on some unidentified date she requested records from the Canadian bank at which she had an account and provided all those records through her counsel to the Government; and, on an unidentified date or dates, had requested records from UBS for four different accounts and provided all records "in … [her] possession" to the Government. ECF No. 86 ¶¶ 3-5.  Defendant's response to the Court admitted that Bank Vontobel "separated from UBS" but she understood "additional bank records" would be provided "very soon."  *Id*. ¶ 6.

_____

[2]    The 13 pages of substantive documents attached appear to include three monthly statements from the Canadian bank at which Defendant maintained a savings account, a U.S. Department of Treasury form, a haphazard group of statements (bi-monthy) from Defendant's Cayman Islands account, a Land Register, closing statement, maintenance letter, and certification of identification from the Cayman Islands.

Defendant also said she "requested bank records from" the Cayman Islands bank and had provided those to her counsel. *Id*. ¶ 7. Defendant provided no other information in her Declaration.

Defendant's January 30, 2026 substantive response to the OSC says "Defendant has produced bank records *in her control* for each of the … accounts" identified by the Government. ECF No. 85 at 2 (emphasis added). The response references Defendant's Declaration filed the following day and summarized above. *Id*. Despite this case arising solely under federal law, Defendant refers to Nevada state law for purposes of defining "legal control" of documents and then cites two cases in which FBAR (*see* below) was at issue for purposes of arguing relevancy. These cases do not assist Defendant.

With respect to relevancy, *United States v. Ruimi*, Case No. 2:22-cv-01576-RAJ, 2024 WL 97361, at *4 (W.D. Wash. Jan. 9, 2024), held (and Defendant quoted): "documents and communications falling outside the 'years at issue' are in fact relevant and material to the determination of willfulness," the same standard cited by the Government. Further, Defendant contends there was no holding that the defendant in that case was required to produce the documents. ECF No. 85 at 3. Defendant is incorrect. In *Ruimi*, the court considered the government's argument that "Defendant cannot properly limit *his discovery production* to the 'years at issue'" and found the defendant had "no basis to temporally limit *his discovery production* …." *Ruimi*, 2024 WL 97361 at **3-4 (emphasis added). The court ordered: "For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Compel. … Defendant is ordered to provide complete responses to RFP Nos. 1, 2, 3, 5, 6, 7 and 9 within fourteen (14) days of the date of this Order." *Id*. at *5 (emphasis in original). Thus, without doubt, Defendant misstates the holding of the decision in *United States v. Ruimi* as the defendant was required to produce documents.

Defendant next cites to *PlayUp, Inc. v. Mintas*, Case No. 2:21-cv-02129-GMN-NJK, 2024 WL 3621449, at *4 (D. Nev. Aug. 1, 2024), and other case law for the proposition that a party is obligated to produce documents he/she has a legal right to obtain. Defendant cites several cases regarding the duty to produce documents stating the "practical ability to obtain" a document does not establish control, and that it is the Government's burden in this case to demonstrate Defendant had control over the documents sought. ECF No. 85 at 3-4 (citations omitted). Defendant admits

that the determination of control is fact specific, and quotes *Clark v. Vega Wholesale*, 181 F.R.D. 470, 472 (D. Nev. 1998), for the proposition that the party from whom documents are sought must be able to "command release" by the party in actual possession of the documents. *Id*. at 4. Defendant then cites case law holding that "a party need not have actual possession of documents to be deemed in control of them." *Id. citing Estate of Young v. Holmes*, 134 F.R.D. 291, 293 (D. Nev. 1991) (citations omitted). Yet, again, Defendant admits, through citations, that if she has the "legal right to obtain" her bank records, she is "deemed to have control" of those documents. *Id*. at 4-5 *citing id.* Interestingly, Defendant never applies the law she cites to the issues before the Court; instead, she states in conclusion that she "has produced bank records in her control for each of the … account" at issue and "has produced the records she's been able to obtain." *Id*. at 2 *citing* to Defendant's Declaration (found at ECF No. 86), 5. In this January 30, 2026 filing, Defendant also offer, somewhat nonsensically, that she "expects to receive additional bank records from … UBS bank by the end of January 2026," thereby admitting control and ignoring the date on which this statement was made. *Id*. at 2.

Defendant cites no case law or facts supporting the proposition that she has neither the legal right nor the ability to obtain all of her bank records from banking institutions in which she holds accounts. All of Defendant's statements and actions are to the contrary. As one court stated, "[i]t is unreasonable to believe that … [Defendant] would not have the legal right to obtain … bank records from the banks where … [she] does business." *Phillips v. Lycamobile USA, Inc.*, Case No. 2:25-MC-0001-ACE, 2025 WL 2097453, at *2 (E.D. Wash. July 15, 2025). To the extent Defendant contends she cannot "obtain" the bank records the Government first sought through RFPs served in March 2024 based on the application of foreign law, the argument fails for two reasons. First, a party relying on foreign law has the burden of showing that such law bars compliance with a court order. *United States v. Vetco Inc.,* 691 F.2d 1281, 1289 (9th Cir.), *cert. denied,* 454 U.S. 1098 (1981). Second, Defendant cites no facts in support of such a conclusion. ECF Nos. 85-86. Indeed, Defendant offers two Declarations (ECF Nos. 86 at 2-3 and 89) neither of which states she lacks control, the legal right to obtain records from the banks at issue, or is prevented from doing so by virtue of any process, procedure, statute, regulation, or common law. *Id*.

6

Given that Defendant provides nothing to support the contention that she lacks or ever lacked control over her own bank records, and provides no reason (other than unsupported vagaries) why she has not provided the records first sought by the Government in March 2024, the Court finds the Government had no need to address any supposed lack of control because there is no legitimate dispute that Defendant has the necessary legal control and right to obtain the records sought. The Court further finds Defendant's Response to the OSC fails to demonstrate cause for her failure to produce documents from the Canadian, Cayman Islands, and UBS banks with the exception of Vontobel.

Nonetheless, to confirm that the Government had not received all of what it first requested in March 2024, the Court entered a Minute Order on February 2, 2026 giving the Government until February 18, 2026 to file a Status Report (the "Report"). ECF No. 87. The Government's Report explains Defendant produced some additional documents, but certain "key categories of records remain[ed] unproduced." ECF 88 at 2. Specifically, the Government identified "complete account opening documents, all corresponding monthly statements, and annual statements … [requested in RFP] No. 1(c)-(e), and ha[d] … not provided a sufficient explanation of the efforts undertaken to obtain them." *Id*. The Government explained this is an action to collect from Defendant outstanding civil penalties (31 U.S.C. § 5321(a)(5)), which is commonly known as FBAR penalties, and the records sought are necessary to establish the willfulness element of the claim. *Id*. The Government submits that with respect to accounts in Canada, Bulgaria, and the Cayman Islands, the "documents would establish when each account was opened, how the account was titled, the nature of Defendant's ownership interest, and the information she provided to the financial institution at the time of opening. Without this … [information], the United States cannot determine the full duration of Defendant's ownership or control over these foreign accounts." *Id*. at 3. Monthly and annual statements are necessary to establish "balances maintained … during the years at issue … and whether those balances triggered reporting obligations." *Id*. at 4. With respect to accounts in Bulgarian banks, Defendant produced "limited records" showing one account was opened as early as 2006; however, there are no account opening documents or statements thereafter. *Id*.

The Government's Report explains the relevance of the documents, argues no further extensions are warranted given production was first ordered to be completed by October 16, 2025 and five months later, after three extensions of time, production is still incomplete. *Id*. at 4-5. The Government argues Defendant has clearly demonstrated "limited, sporadic, and incomplete" efforts to produce documents. *Id*. at 6. The Government walks through the piecemeal production by Defendant beginning in October 2025, and notes that the most recent production, alleged by Defendant to represent records from Bulbank located in Bulgaria, "appear to be Chase Bank documents containing handwritten notations about Bulbank." *Id*.

The Government summarizes Defendant's efforts to produce documents stating: "In total, between October 16, 2025 and the present, Defendant has produced only 12 pages from UniCredit Bulbank in Bulgaria, 10 pages from Central Cooperative Bank, five pages from the Cayman Islands bank, and three pages from the Canadian Imperial Bank of Commerce." *Id*. at 7. The Government provided a similar summary related to Defendant's deficiencies on December 17, 2025. *Id*. *citing* ECF No. 70 at 2. The Government notes that in Defendant's Declaration she visited the Bulgarian banks in September and October 2025—not once before or after those months. *Id*. *citing* ECF No. 89 ¶ 3. The Government further notes "Defendant offers no correspondence from the banks, no written confirmation that such records are unavailable, and no documentation reflecting a formal denial of her requests." *Id*. at 8.

The Government submits sanctions under Fed. R. Civ. P. 37(b)(2) are appropriate and seeks default judgment against Defendant. *Id*. If the Court declines to enter default judgment, the Government seeks an "adverse inference consistent with the missing evidence" such that "the unproduced records would establish reportable balances and ownership." *Id*. The Government also asks the Court to deem certain (unidentified) allegations in its Complaint as established and preclude Defendant from offering any evidence not already produced in discovery. *Id*. at 8-9. No substantive response to the Government's Report was received from Defendant, albeit none was ordered.

8

## II.    Discussion

### a.    Summary of the Law.

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). That authority includes the "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Go–Video, Inc. v. The Motion Picture Ass'n of Am.,* 10 F.3d 693, 695 (9th Cir. 1993).  The Court may use its civil contempt powers "for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947); *see also Taggart v. Lorenzen*, 587 U.S. 554, 560-61 (2019) (quoting, in part, *United Mine Workers*, 330 U.S. at 303-04).  Sanctions for civil contempt are considered nonpunitive and "avoidable through obedience" to court order.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 831 (1994).  When a court imposes coercive contempt fines, the requirement of an "opportunity to purge," i.e., "reduce or avoid the fine through compliance" is what distinguishes civil from criminal contempt; civil contempt fines are fundamentally conditional in nature.  *Id.* at 829 (citing *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947)); *see also Hicks v. Feiock*, 485 U.S. 624, 632-33; *United States v. Ayres*, 166 F.3d 991, 997 (9th Cir. 1999) ("Civil contempt sanctions ... are only appropriate where the contemnor is able to purge the contempt by his own affirmative act ....").  Coercive sanctions "may only be imposed 'after a reasoned consideration' of 'the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Parsons v. Ryan*, 949 F.3d 443, 457 (9th Cir. 2020).  Civil contempt sanctions "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am.*, 512 U.S. at 827.  "Neither a jury trial nor proof beyond a reasonable doubt is required." *Id.*  "Because civil compensatory sanctions are remedial, they

typically take the form of unconditional monetary sanctions; whereas coercive civil sanctions, intended to deter, generally take the form of conditional fines." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628-30 (9th Cir. 2016).

The Ninth Circuit explains that a "district court should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders." *United States v. Flores*, 628 F.2d 521, 527 (9th Cir. 1980) (internal quotation marks omitted). "[I]n determining how large a coercive sanction should be[,] the court should consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citations omitted). "If the fine, or any portion of the fine, is coercive, it should be payable to the court, not [the complainant]." *Id.*

Because the Government seeks sanctions under Rule 37 of the Federal Rules of Civil Procedure, the Court notes it has the authority to sanction "for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten,* 262 F.3d 923, 947 (9th Cir.2001), *cert. denied sub nom., McLachlan v. Simon,* 536 U.S. 941 (2002). Under Rule 37(b)(2), subsections (A) through (C), sanctions are "appropriate only in 'extreme circumstances' and where the violation is 'due to willfulness, bad faith, or fault of the party.'" *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir.), *cert. denied,* 537 U.S. 1018 (2002) (citations omitted); *Computer Task Group, Inc. v. Brotby,* 364 F.3d 1112, 1115 (9th Cir. 2004) (per curiam). "Disobedient conduct not shown to be outside the litigant's control meets this standard." *Fair Housing of Marin,* 285 F.3d at 905.

b.    Analysis

The Court is at a loss with respect to Defendant's failure to produce documents after substantial time and opportunity to do so. The request for documents began in March 2024 and, to date, Defendant has provided, at best, an incomplete production and reasons that simply do not demonstrate sincere efforts to obtain the records relevant to this dispute. This case was brought against Defendant (Jo Patricia Rabchev) from its commencement in 2021. Despite a request first made in March 2024, Defendant says she visited Bulgarian banks in September and October 2025—

18 months after the request was made. Defendant offers no explanation for her delay. In sum, Defendant's response to the OSC offers nothing demonstrating efforts by her to obtain records from the Bulgarian banks at any time other than the September and October 2025 visits.

In her Declarations (ECF Nos. 86 and 89) Defendant says she "requested … records" from the Canadian bank at issue, including account opening records; however, she says nothing about what she did or when she did so. Despite the lack of specifics, Defendant claims she has not received account opening records and that she otherwise "provided all bank records … obtained from this account" to her attorney. *Id.* Defendant does not mention that her counsel did not commence an effort to obtain bank records from Canada until approximately seven months after they were first requested. ECF No. 60-1 ¶ 13. Moreover, Defendant says nothing about her efforts to follow up on whatever it is her counsel did.

Regarding her bank account in the Cayman Islands, Defendant says she "recently located records for this bank" which she provided to her counsel. ECF No. 89 ¶ 6. Again, Defendant does not comment on the fact that her counsel does not appear to have commenced communications with the Cayman Islands bank until November 2024; nor does she identify what, if any efforts she or her counsel made to obtain records since that date. Defendant says nothing whatsoever about *her* effort to obtain records from the Cayman Islands bank—only that she has "been unable to obtain bank account opening records for this account." *Id*.

Defendant's explanations are at best inadequate and at worst so vague as to be evasive. The Court does not enter sanctions lightly. ECF Nos. 85, 86. Indeed, the Court provided Defendant substantial time following the Government's August 2025 Motion to Compel to produce records. The Court provided Defendant with substantial warning that sanctions, including daily monetary sanctions, would be entered if she failed to comply with the Court's Orders. ECF No. 71 (Transcript of the September 19, 2025 hearing on the Government's Motion to Compel at 7, 8, 9, and 11); ECF No. 80 (addressing Defendant's Motion for Extension of Time at ECF No. 76 and stating "Defendant's failure to produce records on or before January 2, 2026, as required by this Order and which were previously ordered produced by the Court (ECF No. 69), will result in sanctions up to and including a finding of contempt of court, a daily monetary fine, and or the striking of Defendant's

Amended Answer"); and ECF No. 82 (advising Defendant that if UBS documents were not produced as ordered "daily monetary sanctions … [would] be entered for every day after February 11, 2026" and explaining that failure to show cause for why the records from the Canadian and Cayman Islands banks were not produced, would result in "a daily fee of $100 as a sanction for the failure."). The Court's warnings were clear, unequivocal, and provided Defendant ample time to avoid sanctions. Defendant's failure to provide information demonstrating anything more than cursory efforts to comply with Court orders and otherwise non-responsiveness to the Court's repeated warnings and opportunity to obtain bank records or, at a minimum, demonstrate substantial good faith efforts to do so, support the award of sanctions. *W. States Insulators & Allied Workers Pension Plan v. Jenco Mech. Insulation, Inc.,* Case No. C-11-0175 EMC, 2013 WL 2252004 (N.D. Cal. May 22, 2013) (stating "given the party's 'evasive behavior and non-responsiveness,' monetary sanctions in the amount of $100 per day were 'reasonably calibrated to coerce compliance, and ... in line with other orders providing for coercive monetary sanctions'").

**III.    Order**

Based on the foregoing, IT IS HEREBY ORDERED that, consistent with the Court's prior Orders, Defendant must pay monetary sanctions into the Court's general fund. However, to ensure Defendant has been provided every opportunity to comply with the Court's Orders:

1.    the obligation to pay daily sanctions will commence 30 court days after the date of this Order. Thereafter, Defendant must pay $100 for each court day she fails to produce complete records for each bank account identified in the Government's RFP for a period of 60 days.

2.    the 30 court days is provided to Defendant to allow her time to produce all documents requested or demonstrate her substantial, good faith efforts to do so by providing details, supported by correspondence or other communications, in which she has engaged with each financial institution and the responses from the same that explain how each institution caused the failure to produce records over the last two year period (the "Good Faith Requirement"). Defendant *may* file a report with the Court no later than **April 23, 2025—absolutely no extensions will be granted for any reason whatsoever—demonstrating production of all documents requested by the**

**Government or establishing, with substantial, independent evidence, that her failure to produce the bank records requested was outside her control**.

3.      If as of **April 23, 2026**, Defendant has not either cured her failure to produce documents or satisfied her "Good Faith Requirement" demonstrated through a report to the Court, she **must** pay the $100 fine for 60 days commencing on **April 24, 2026**.  If during that 60 day period Defendant fulfills her production requirement and the parties submit a joint status report so stating, Defendant's obligation to pay sanctions will automatically cease.  If Defendant fails to fulfill her obligations during this 60 day period, the Government is to provide prompt notice to the Court and request sanctions including the striking of Defendant's Amended Answer and the entry of default against Defendant.

4.      The daily amount to be deposited by Defendant will be held in the Court's general fund.

Dated this 15th day of March, 2026.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

13